Before, well, we'll call the first case and I'll make an announcement. Case number 14-27-36, People v. Dennis James. Should we do something with the blinds or the drapes? All right. Hold on for one moment. So while we're doing that, I did want to announce that Justice Robert Gordon will be, and hopefully this is going to, you know, diminish that bright light. Is that better? All right, good. So Justice Robert Gordon is the third panel member. He's not available today, but he will fully participate in the case and will obviously have opportunity to listen to the oral argument and obviously the briefs and the record that was filed in this case. So with that, if both attorneys that are going to present argument would step up and identify yourselves for the record. Please. Good morning, Your Honors. Claire Wesley, Connelly. I'm an Assistant State's Attorney and I represent the people of the state of Illinois. All right. Good morning. And for the appellants. Good morning. My name is Daniel Mellon. I'm with the Office of the State Appellate Defender and I represent Dennis Jaimes. Each of you will have about 15 minutes to present argument and from that, Mr. Mellon, you may save out some time for everybody. All right. You may proceed. May it please the court. Again, my name is Daniel Mellon on behalf of Dennis Jaimes. I plan on focusing my argument on the first issue here concerning the court's response to the jury notice. But, of course, I'll take any questions you might have on the second issue. With the first issue, this case is controlled by this court's decision in people versus peoples. There's no dispute here as to the facts that Jaimes was charged with murder and aggravated discharge of a firearm for allegedly jumping out of the van and discharging a gun at William Diaz, who he killed, and Daniel Rodriguez. So there was no charge of murder, great bodily harm, new or should have known? No. Okay. So the only counts they had were based on personally discharging a firearm. Well, as to the murder, the jury was instructed that they had to find that he caused the acts that caused the death of William Diaz. Right. So that's the source of their confusion, I think. They were said, as to the murder, the court, when they were instructed, the first proposition they had to prove was that Dennis Jaimes caused the act that caused the act. And then if they find him guilty of murder, then they get to the ag discharge, correct? I think if they find him guilty of murder, they go to the firearm enhancement. I'm sorry, the firearm enhancement. And then in separate verdict on aggravated discharge. The personal discharge and the aggravated discharge required the jury to find that he actually discharged the gun. Which they rejected. Sorry? Which the jury rejected. Yes. Correct. Yes. Were there attempt murder charges here? Yeah, but they were dropped. Oh, okay. Is this not clear for me to read, what happened to those? Yes, correct. So they proceeded on murder, and they proceeded on aggravated discharge, but there's also the firearm enhancement. So is it your position that unless they're instructed on accountability, you cannot find him guilty of murder unless he also was found guilty of the aggravated discharge? The personal discharge and the aggravated discharge. In cases like this, as in Peoples, yes, that is correct. He can't be found guilty. Is there any difference, though, because I understand your suggestion that Peoples is controlled. Was there any nuanced difference in the question the jury asked in Peoples? If I may clarify, between the question there and the question here? Yeah, yeah. What was the question in Peoples? The question in Peoples is specifically, can someone be guilty of first degree murder and not pull the trigger? Okay, so is that the same question that was asked here? Yes, that's the same exact question. It's even clearer, I think. Can we find guilty of first degree murder but not guilty of discharging and aggravated? So discharging and aggravated required pulling the trigger. It's the same exact question. Well, it's not the same exact question, but I see you're analogizing it. Yes. And the fact of the matter is that your position is that when a jury does ask a question about whether someone can be guilty of aggravated discharge with a firearm or personally discharging, and they're also charged with murder, that the judge should answer that question? Yes. The judge should make perfectly clear that the answer is no. That's exactly what Peoples says. So here, the jury asks. But actually, if they're charged with murder, aren't you sort of dismissing the whole idea of inconsistent verdicts and lenity? No, and that was addressed in Peoples. Well, the question is certainly different. I don't think they're the same. I mean, I know you're arguing they're exactly the same, but they aren't. The question that the jury got in Peoples versus, you know, the question here, everybody agreed it was unclear, but no one talked about accountability at that point, did they? After the first question? No. And didn't the trial attorney, the defendant's trial attorney, acquiesce to how those questions were answered? No. The trial attorney at the instructions conference asked for a non-IPI. Right. But I'm talking about the questions specifically, the questions that are coming out from the jury, the defendant's attorney acquiesced to how the judge was responding to those questions. As to the first question about can we find guilty of first degree but not discharge and aggravated, yes, the parties agreed that they wanted the jury to clarify their question. Well, because everybody was really not clear, but nobody thought, oh, the jury wants to know about accountability. Defense counsel did, because a second note came out, and that note was what is intended as an act for first degree murder. Okay. Well, he wasn't charged just with intentional, was he? Yes. I thought you said that there was a, he caused death and great bodily harm. He was charged with causing. We only have one murder in Illinois, right? Yes. Well, yes, correct. He was charged, well, the jury was directed, the first proposition they had to find was did Dennis Jimenez cause the act which caused the death of William Diaz. So now they're asking. So what does that tell them? I mean, that act here, as in people's, the only thing that they could consider is whether or not he discharged the gun. Well, that, no, because that would specifically say did he discharge the gun within that instruction. It doesn't say that. It says did he cause the act. You could be causing the act with a myriad of actions, could you not? Not in this circumstance. I mean, in this circumstance where the state chooses to prosecute him only as a principal and not as an accomplice, the only act, and this is what people says that the jury should consider, is whether or not he actually discharged the gun. Well, they weren't told anything about what you're talking about now, about he was charged only as principal. And what was the instruction? Let's talk about the instruction that was offered. What is that case that? It's unclear. From the instruction? Yeah, the one that was offered about something about, read it to us. The non-IPA? Yeah, but it mentions, sure, sure. Some of you have heard of this doctrine. What is that? It's not clear from the record. It's phonetic. This is what was offered. He wanted this to go to the jury. Say some of you have heard of whatever? Well, he says that allows a person to be charged with a crime which was directly committed by someone else. If the charged person asked for the crime to be committed, aided in the commission of the crime, or was in conspiracy with the person who directly committed the crime. In other words, accountability. Why didn't he just ask for accountability? Because he didn't want accountability. That was not a theory that was pursued at trial by the state. No. This was tendered as a response to the second note. Sure, but are you saying the court should have given that instruction? If not this instruction, something that tells them that they must find that he was the shooter in order to find him guilty of murder. What did the IPA that they got tell them about what the state had to prove? Maybe I'm putting you on the spot. We'll have to look at it specifically. The IPA for murder? The issues instruction. It says the first proposition is the state must prove that Dennis Jimenez committed the act which caused the death of William Diaz. That's in the act. This second note, asking what is intended as act, it's clearly referring to that instruction. Go ahead. In cases where the state only proceeds on the theory that the defendant was the principal and no accountability, the only act that they should be allowed to consider is whether or not he discharged the gun. Yes, but then they would put that in the instruction. That's not what that IPA says. That's why the jury was confused. There is no requirement under Illinois law that a person has to personally discharge a firearm to be convicted of murder, true? True. In a case like this, actually, that is a requirement. No, it isn't because there is absolutely no requirement that a person charged with murder, and we only have one murder in Illinois, that the jury determine, you're saying that any time someone is charged with murder, that they also have to be charged with personally discharging the gun, and that's not the law in Illinois. It's simply not. Moving on, and we're familiar with the people's case, but I mean people versus people. Correct. But in this case, weren't there differing views about or testimony that some of the witnesses said that this defendant fired the gun, and then there were witnesses who said he was there and got out of the car? Somewhat of a conflict, yes. Okay, so the jury heard that. They get to believe whoever they want. And one of your issues is that that testimony shouldn't have come in, but they get to decide the credibility of those witnesses, and with the instruction that was given that he caused the death, now that's what they were told, couldn't the jury have concluded that based on the instructions that the court gave? Yes, but the problem here is they asked for clarification on a point of law. Yeah, and all the parties agreed that it was totally unclear what they were asking for. And so the court, how are we looking at her decision? How are we looking at her decision? Yes. What kind of review do we give it? You're saying it's a question of law. Well, it's the response to, maybe I'm unclear on the question, how do we review the issue? I thought we were reviewing it for an abuse of discretion, how she decided to instruct the jury. Well, the first response was that she asked for clarification on their question, because the question wasn't very clear. Isn't that correct? I would say it's perfectly clear, but they were confused. Sure, yes, but they did clarify, and they sent out another note. What was the second note? The clarifying note was, are each of the three charges independent of each other?  Okay, and then what did the judge say? Didn't they all agree to the response? Ultimately they agreed, you have your instructions, keep deliberating. Okay, so what about that? Are we going to review that de novo, that the parties all agreed that this was the appropriate response, and then the court gave it? How is there an error? There's an error first. Counsel is ineffective for agreeing to that. We provide a case in our brief, Lowery, where the failure to understand what they're asking, which he did understand, he anticipated this issue. He wanted to give this non-IPI, he wanted to give it before the jury started deliberating, he wanted to give it in response to one of the notes. We do argue it's ineffective for him to agree to this. But if the court properly denied that instruction, which I'm not sure what it's saying, I don't know about that case, if the court properly denied that, how is this lawyer ineffective? Because he drafted this response. That we don't know what he's talking about. He was offering a non-IPI, and it wasn't one that the court wanted to give. But you basically think it would have appropriately at least explained to the jury that it's either, he either caused the death or he was accountable. And here the state didn't charge accountability, so therefore this whole discussion about the notes was totally improper and erroneous. But the lawyer was ineffective. He should have suggested, we have to tell them, as he was trying to, he should have made clear or he should have preserved it, or he should have suggested that the jury is asking whether or not they can find him guilty without finding that he was the shooter. I think from these notes, there's really no other conclusion that that's what they were asking. What about all these cases that allow juries to act with lenity? This is really, I mean, the state's going to argue this is really just an inconsistent verdict case. That's all it was. And everybody operated under that sort of theory because everybody agreed the first question was unclear. Well, this is not just an inconsistent verdict case because this is a case where the jury is sending questions asking for clarification on a point of law. While it might have been unclear, you just look at what they're asking. One, can we find guilty of first-degree murder but not guilty of discharging? They can't. Well, people says the answer should be no. And then they ask for clarification, and it's actually pretty sophisticated what they're asking. They're asking, can we separate out these charges? Well, how is the court going to answer that one? Did it clear up anything when it said, are these acts independent? What was that question? I think, can we independently find, one, guilty of murder, and two, that he didn't discharge the gun? Yeah. And the answer to that is no. That's what people say. Only under factional scenarios such as this where the state does not proceed on an accountability theory such as the case in Peoples. So generally, the answer is yes, but in cases such as these where they did not proceed as in charging him or prosecuting him as an accomplice, people says the answer should be no. And, yes, he did say you have your instructions and keep deliberating. But we've cited a case in our brief, Morris, where that is still inadequate. Is that the burglary case? Yes. And that's a case where the response was you have your instructions, keep deliberating. And that's still error. You did concede earlier that under Illinois law, a person can be guilty of murder without personally discharging a firearm. Yes. And I will concede these are inconsistent verdicts, and I will concede that inconsistent verdicts under the Illinois law, Supreme Court law, and this Court's decision, Alexander, are not grounds for challenging a conviction. But that's not what we're doing here. We don't really know what the jury decided in their deliberations. It certainly could be argued that they were operating under, you know, this principle of lenity. Perhaps. Because they were told in the jury instructions on the issues, the State has to prove, and then you explained that it said that the defendant caused the accident, caused the death or whatever. That's a little redundant. And in this case, several witnesses testified. Some said he actually pulled the trigger. Some said he was there. So the jury heard all that. So when they were deliberating, I think it could be argued that they decided he caused the death. If they accepted the testimony of certain witnesses that he shot, he was the actual shooter. I would have to disagree because they found that he was not the shooter. You don't have to fire the gun to cause death in Illinois. I mean, maybe the instructions should be revised. I don't know. The IPI you read says caused the death. So that's kind of a broad sort of statement. Well, committed the act which caused the death. Right. But in this case, in cases like this where there's no accountability theory, and they're not instructed on accountability theory. But they could have had, the IPI could have read committed the shooting that caused the death. But it doesn't. Correct. It keeps it vague on X. So your position would require us to read something into that IPI that is not there. No, my position is the jury exhibited confusion. And they showed that they were considering convicting him based on a theory of accountability. Well, they wanted to, or maybe they thought, hey, you know what, maybe there's something less if you aren't the shooter. They could have been back in the room saying, you know, hey, maybe there's something less about finding someone accountable, or I don't even know if they could have come up with that word on their own. But it's possible they were all, you know, operating under this idea that maybe we can do something less than murder if we say this. I don't know. We can't speculate. And this exact point was addressed in Peoples, where it is possible that they were, you know, this was jury lenity. But you certainly can't rule out the very high probability that they actually convicted him based on a theory of accountability. No, and you can't really rule out that they convicted him based on the instructions the court gave that he committed the acts that caused the death. And they were also told, you don't have to go on to personally discharging a firearm in this case if you don't find first degree. But they found first degree. And they found... I'm just saying they were told, you don't decide this next one until you decide the first one. And once you decide the first one, you can decide these. And they chose to find not guilty or enter a verdict. Well, it's certainly a significant issue that you have raised here. Do you want to talk about the other one or just wait for rebuttal? If the court has any questions. Why don't we start with Peoples? Peoples is significantly different than this case. Why? Because in Peoples, the jury asked an explicit question. We don't have an explicit question in this case. I'll read you what the question was in Peoples. Can someone be guilty of first degree murder and not pull the trigger? We're struggling with the concept of a guilty verdict, but not having enough evidence that shows or proves the defendant was the shooter. They could not have been more clear in what they were struggling with. Your question was a little more involved because you read the other part of what they said. Read that again, would you? We are struggling with the concept of a guilty verdict, but not having enough evidence that shows or proves the defendant was the shooter. That's a much more explicit question than what we have in this case. What was the question in this case that everybody said was unclear? All the parties, as you point out, agreed that the questions in this case were unclear. Well, they said the first one was. The other ones they did also. Can we find guilty of first degree but not guilty of discharging and aggravated? The defendant was charged with first degree murder, with personally discharging, and then aggravated discharge of a firearm. The trial court said, I don't know if they mean personally discharging or aggravated discharge of a firearm. Are you clear? Defense counsel responded, I'm not clear, Your Honor. Then all the parties agreed that they needed to have the jury clarify what their question was. In the instruction conference, when did defense counsel first ask for the instruction that talks about accountability under Illinois law? He asked for that during the jury instruction conference. So that was prior to this. He reiterated his request during the jury notes, the subsequent. Yes, he did. Yes, he did. So he preserved any claim that he had regarding the inappropriateness of the trial court's decision regarding the failure to give the non-IPI instruction. And I submit that that non-IPI instruction was legally incorrect. And defense counsel now is not challenging that. Okay, but other than citing some case, it's hard to understand what case, doesn't that aptly describe an accountability instruction? Well, first of all, I've never run into a case in which a non-IPI instruction has been given in a case which prevents a jury from considering a theory. And under Illinois law, if there's an appropriate IPI, the court is bound to give that. Correct. And there is an accountability instruction, as you well know, that provides the jury to consider it. But I don't know of an instance in which a defense has been able to provide a non-IPI to prevent a jury from considering a theory. This is a gang shooting. We have two people out on the street. You have multiple different accounts of what occurred. Why wouldn't they instruct on accountability? Well, I sort of disagree as to whether or not there was multiple accounts as to what occurred. Well, I'm looking at five different witnesses whose grand jury testimony all came in. So that qualifies as multiple accounts in my book. Okay, so, well, when you say about the shooting, there's eight people who are at a house who are talking about how they want to retaliate against the Latin kings. Four of them decide that they're going to go and get into the minivan and go shoot some kings. Four of them remain. So the four people that were there, the only count really of the actual shooting we get from Daniel Rodriguez, who's the surviving cohort. Who identifies the defendant. And then you have Maldonado, who also got out of the car along with the defendant. So when you say the shooting, I'm considering it much more narrow than you are as to who did the shooting. He was there, he was present. Okay, that's my question. Why wouldn't you instruct on an accountability theory? Why would they leave that back door wide open? It's a theory of how we want to prosecute the case. Our case was built on him being the shooter. Daniel Rodriguez identified the defendant as the shooter. The jury clearly rejected that theory. No, the jury did not clearly reject that theory. The jury found the defendant guilty of first degree murder, which did not require them to find that the defendant was the shooter. The jury instructions the defendant perform the act which caused the victim's death. And that, we're saying it was a shooting, but whether or not how they interpret it, I don't know. We don't know how they interpret it. And the fact that he was found not guilty of personal discharge means nothing in this case. Because inconsistent verdicts can't be attacked anymore. They used to be able to, now they can't be attacked. We can't get anything from the jury's verdict. We can't interpret anything from that. Isn't there certainly a suggestion there that the jury was toying with the idea of accountability? They didn't use that word. I'm not saying they would or should know that term. Right, because they didn't receive the definition. No one said the word accountability to the jury. I don't think you read the first, you read the instructions. You read the questions that were asked in Peoples. What was the question again? Okay, so there's actually three. So the first one, can we find guilty of first degree but not guilty of discharging and aggravated? The parties were in agreement that they're not concerned whether or not, they're not sure. And is the universal answer to that yes or no or either? I think the answer to that should be please clarify. I think what they answered was appropriate. Can we find guilty of first degree but not guilty of discharging and aggravated? You think that's unclear. That's unclear because the defendant was charged with personally discharging and aggravated discharging. Under Illinois law, can you be guilty of first degree murder? You only have one murder in Illinois. Right. Can you be guilty of first degree murder and at the same time be found not guilty of aggravated discharging of a firearm or personally discharging a firearm? Yes. But everybody in the courtroom thought it was unclear. They were in agreement and that goes along with my affirmative acquiescence argument in this case. In factual scenarios such as people's, isn't that case suggesting when there is a suggestion of confusion about this issue where the person perhaps was maybe accountable instead of the principle that the jury should be told? Should answer it explicitly? Yes. In an instance like people in which they ask an explicit question and I submit that this was not an explicit question. Because when they went back to clarify, they said please define what is intended as an act in first degree murder. And again, the judge response to that, that's even more confusing. Because what are they talking about, the definition of an act? Because there is a definition of an act, but do we provide that? What are they actually seeking? You don't have the murder instructions handy, do you? No, I didn't. And what was he charged with originally, the murder indictment? Intentional and knowing murder? I believe so. I would be guessing, I apologize. So what I'd like to do is I'd like to take you back for a moment for what happened with, he sent the defense attorney in this case, it was actually rather crappy, what he did was he submitted this non-IPI instruction. The judge said no, we're not going to give this to you. But then what happened was defense counsel, and I apologize because in my brief I put down that neither party mentioned accountability theory in their closing arguments. Actually I went back and looked. He did argue accountability, didn't use the word he who, defense counsel did. Defense counsel argued it. And he said, Looney told Jorge Linares I caught a flake, I handle business. If you believe that Looney said that, then you don't believe the defendant did what they say he did. Introducing the theory that it wasn't the defendant who was the shooter, it was Ruben Maldonado, who was the other person who got out of the car along with the defendant. He didn't say accountability, but he introduced that theory to the jury. Is this subject, you've argued this was forfeited, haven't you? Correct. If it's not forfeited. Well, actually I argued that it was affirmative acquiescence. Well, let's assume for a moment that they didn't acquiesce. Now, is this subject to a harmless error analysis? No, they argued that it was plain error, and I argue that it's not a subject to plain error, it's a subject to an effective assistance counsel claim, because that's the alternative for affirmative acquiescence. So, under either of those, if we reject your claim that it wasn't acquiesced to, this isn't a plain error case, but is it subject to, if it were subject to a harmless error, is this a harmless error? Yes. And why? Why? Because the evidence in this case under harmless error, you look at whether or not the defendant was prejudiced and look at the strength of the evidence. And the evidence in this case I submit was overwhelming. Daniel Rodriguez identified the defendant out there. He had a clear opportunity to identify the defendant. He did so in a photo rate. He did so in a lineup. And then there were other witnesses. And there was a lot of co-conspirator statements. They're challenged, but there are co-conspirator statements that he's not challenging that were made prior to the shooting. He's only challenging the ones that he says were not made in furtherance, and those are the ones that were after the shooting. So there's things that inculcate the defendant in this. They show that he went there. He wanted to be the shooter. They were laughing about it. They were trying to decide who was going to be the shooter. But generally speaking, wouldn't you say that statements made after the commission of a crime wouldn't generally fall into the co-conspirator exception? When you say generally, I don't know. We have to say generally. No, it has to be. There is a requirement that the co-conspirator statements have to be in furtherance of the conspiracy. And I think I've outlined in my brief how all of those statements that were made by participants, the people who left to go to the scene, who were in the car, came back and reported back. And what I laid out in my brief, what the conspiracy had not stopped at this one shooting, because the object of this conspiracy was to shoot Kings. Is there anything wrong with the IPI instructions for murder when they say that the state has to prove that the defendant committed the acts which caused the death? No, because I think in the IPI instruction is general. Because first degree murder, you don't need to find a specific manner in which he performed an act that caused the death. And he did so. And I also cited to a case of People v. Alexander in our brief in which this court has found that the prosecution is not required to prove to the jury, and the jury is not required to find the defendant specifically used a firearm, even if he's charged with personal discharge. Isn't this issue going to continually come up where the state is charging people with murder, then they're charging and adding this personally discharged to get a greater penalty, and then they're not going to submit, they're not going to charge accountability? Isn't this problem going to continually happen that we're facing here if the state makes these decisions that we're not going with accountability, it's all or nothing? I think there are some cases in which this will arise. Correct. Indicates the problem that can arise when the state prosecutes this case the way they decided to charge this. I think what happened in this case was defense counsel was rather crafty in what he decided to do, and he decided to interject a concept of accountability. We did not argue accountability. We said that the defendant was the shooter. Defense counsel was the one who planted that seed. We understand what happened. That's not the issue. Justice McBride's question is, don't you think this issue is going to continue to come up when you have situations like this and the state chooses not to proceed on a theory of accountability in addition to the first degree murder personally discharged? Yes. I think this, yes. It will continue. Yes, it will continue, but I don't see it to be a problem because in this case we argue what was basic. Probably the most significant issue in this case right now, other than the other argument, which goes to whether or not there was all these other statements that really weren't co-conspirator statements. Well, actually, what he's not, his argument has to do with the jury questions. He did not challenge the appropriateness of the IPI jury instructions in this case. Yeah, I understand. So that is something that you're concerned about, but that is not what he raised in this case. So what we have in this case is what may be, some people may argue to be an inconsistent verdict. I don't think it's an inconsistent verdict because we can't look into the minds of the jurors in this case and grasp what they were thinking when they decided to find him guilty of first degree and not guilty of personal discharge. They could have said, we're going to cut him a break. We feel sorry for him or whatever. We're going to just find him guilty of the first degree murder. So when you start trying to rely upon inconsistent verdicts to read into what was an appropriate response to a jury note. You're correct, I suppose you could say, that there was lenity here because there's an additional penalty, isn't there, if the jury finds personally discharged? Correct. And what I submit in this case is really the question is whether or not defense counsel, trial counsel in this case, was ineffective. And I submit trial counsel actually was very effective in this case because he planted that seed. Perhaps that's what they followed. I don't know. And the end result was defendant had 25 less years. That was the sentence in this case. We couldn't get him for the additional 25 years. We just got him for the first degree. So if we're looking at this in terms of ineffective assistance of counsel, this counsel gave this defendant a big gift. Well, I think that defense counsel or even the state of health offender is going to argue that he's not looking for a reduction in a sentence here. He thinks that under Peoples the defendant would or should have been told or the jury should have been told something different so that he would have been found or that he'd be entitled to a new trial. Right. And again, Peoples, I explained to you why I think that's different, but I also want to point out that when we look at whether or not the trial court's response to this case was appropriate, and I just want to clarify one thing. You were asking what the standard review is. There's actually a dual standard review in this case. The determination as to whether the trial court should have answered the question is abuse of discretion. And whether the trial court's response is correct is de novo. So I just wanted to clarify that, and that's based on the case that defense counsel cited. But I think there's also a danger in these cases when you look at the jury notes and the appropriate response is that when you rely upon what the verdict was, you have to look at what the parties and trial court knew at the time that they were considering these jury notes. That's post hoc. They don't know that this is happening. So would you say, then, that the first review of the first question is an abuse of discretion, not de novo? Correct. Or is it de novo? Correct. Abuse of discretion? Right. Yes. Yes. And that's according, and I looked at the case this morning, what defense counsel cited to as the appropriate standard review. And that's what that case says. So the bottom line is I actually read this request that the defendant's conviction in this case be affirmed. Thank you. Mr. Malin. We are here today because of how the state chose to proceed in this case. Justice Burke, just as you asked, why wouldn't they instruct on accountability? It's because they wanted to proceed on an all or nothing. They wanted to get the add-on. They wanted to get a 45-year minimum on murder. Is this subject to harmless error? Is it harmless error? Yes. If there was an error, you're saying in the instructions, right? Yes. In the response to the notes, correct. That is our issue. Is this, whatever happened, you might describe it as a mess. And I understand your position. And you have this people's case that you think supports what you're arguing. But at the end of the day, Mr. Malin, is it subject to a harmless error? In other words, would this jury have returned the same verdict regardless? No. There is a very high probability that this jury convicted Jaimez based on a theory of accountability. And if they had been properly instructed, if they had been told, no, you have to find that he was the shooter in order to find him guilty of murder. That's what people says should have happened in this case. Why wouldn't it be subject to harmless error? Well, it's not harmless. He was prejudiced by the erroneous response. There is a very high likelihood that if they had gotten the proper response, if their questions had been clarified, they would have acquitted him of murder. How do you figure that? Because the proper response, when they're asking, can we find him guilty of murder but not guilty of discharging the gun? The answer is no. They found that he was not proven to have discharged the gun. If they had been told that you have to find that he was guilty of murder, you have to find that he had discharged the gun to find him guilty of murder, they would have acquitted him of murder. I have a problem with the whole universal question about murder. In this case, under these facts, you're saying the jury had to be told that the answer is yes, right? They should have been told that you can't have the murder without personally discharging in this case. Yes. And that the judge should have told them that immediately. Yes. It should have been clear to them that if they wanted to find him guilty of murder, they have to find that he was the one that was the shooter. Because that was the theory that was below. And this is not just about the theory of the case, but as instructed by the court. The prejudice here is with no instructions and no answer to their questions, the jurors were free to make up their own theory of accountability. What about the people's case? Now, when a posting counsel stepped up, she read another portion of the question that you never pointed out to us. Doesn't that make this case a little different? I mean, she read it out loud, and then they actually said in the second part of it how they were struggling with this. You didn't mention that. Well, I didn't mean to not mention that. No, I don't. Because I think we can't look at this one question in a vacuum. We have to read all three of these questions together in light of the circumstances of this case, in light of the fact that defense counsel tendered a non-IPI even before this came up. And I'll take issue with what defense counsel didn't inject any sort of theory of accountability here. The theory of the defense was, appropriately, Dennis wasn't the shooter. Because he knew that if he could prove that he wasn't the shooter, he could get an acquittal on the murder. That's why he wanted to offer the instruction that he did. Don't consider any other acts other than whether or not Dennis actually discharged the firearm. But, you know, that's not really an accurate statement of the law, is it? That a person, I mean, the jury was told that under Illinois law, if the defendant committed the acts which caused the death, you should find, under the issue of instruction, the defendant guilty. If he didn't commit the acts that caused the death, you should find the defendant not guilty. And the jury was confused. And they asked for clarification. And you read the notes, one after another, you can see they're asking, they have a problem with the fact that it's going to be inconsistent for them to find him guilty of murder, but also find him not guilty of discharging the firearm. But I go back to the definition of acts in the IPI, is that restricted to solely personally discharging the firearm? And if it was, why didn't they just replace acts with discharging the firearm? But they didn't. That's not how the IPI reads. That's what led to the confusion in this case, and only these sort of cases, where the theory is he is the shooter. That's the only act that matters for purposes of this case, and in people's. So that's why they were confused. They realized that the state is only prosecuting him as the shooter. They were not instructed at all about accountability. If there's only one form of murder under Illinois law, does your argument really hold any water? I'll point exactly to people's, and people's address this fact that yes, you can find someone guilty of murder without finding them having personally discharged. But what really the issue is here is clarification to jury notes. So we are not challenging this, again, saying that the inconsistent verdicts mean reversal. We completely acknowledge that. But it's also well established that when the jury asks for clarification on a point of law, as they did here, the trial court has a duty to explain the law to them. And you're saying that under Illinois law, when the state does not proceed under any accountability theory, and if the jury asks a question in that regard, they should be told the correct answer. And if not, the defendant is entitled to a new trial. Anything else you want to add? Thank you. All right. We would, I think, echo what both of us would say. The case was well-argued and well-briefed, and we'll take it under revise.